IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES GIFFORD

        Plaintiff,

          v.

ORLANDO HARPER, individually and in his
official capacity as Superintendent/Warden of
the Allegheny County Jail, ALLEGHENY
COUNTY, CO ERO, individually and in his
official capacity as a correctional officer,
JOHN DOE, individually and in his official
capacity as a correctional officer, LATOYA
WARREN, individually and in her official
Capacity as Deputy Warden of the Allegheny
County Jail, MICHAEL WALLER, DORIAN
WILLIAMS, GREGORY SMITH,
DOMINQUE RUCKER, RICHARD
MCCLINTON, SANTINO DREW, and
DORIAN PEEBLES,

        Defendants.

Case Number

Judge

## COMPLAINT IN CIVIL ACTION

AND NOW, come Plaintiff CHARLES GIFFORD, by and through his attorney,

STEVEN M. BARTH, ESQUIRE, and file the following COMPLAINT:

## PARTIES

1.    Plaintiff, CHARLES GIFFORD, is an adult individual residing in Allegheny

County, Pennsylvania.

2.      At all times relevant hereto, Defendant ORLANDO HARPER (hereinafter "HARPER") was the Warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards, and was responsible for the health, safety, and adequate medical treatment of inmates within the Allegheny County Jail.

3.      At all times relevant hereto, Defendant HARPER was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate medical treatment to all inmates within the Allegheny County Jail.  Accordingly, Defendant HARPER was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate medical treatment to inmates.

4.      At all times relevant hereto, Defendant HARPER represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate medical treatment of inmates.  As such, Defendant HARPER acted under color of state law in those regards.

5.      At all times relevant hereto, Defendant LATOYA WARREN, (hereinafter "WARREN") was the deputy warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, she was responsible for the training, supervision, direction, procedures and conduct of all guards, and was responsible for the health, safety, and adequate medical treatment of inmates within the Allegheny County Jail.

6.      At all times relevant hereto, Defendant WARREN represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties,

2

responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate medical treatment of inmates.  As such, Defendant WARREN acted under color of state law in those regards.

7.     At all times relevant hereto, Defendant WARREN was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate medical treatment to all inmates within the Allegheny County Jail.  Accordingly, Defendant WARREN was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate medical treatment to inmates.

8.     At all times relevant hereto, Defendants HARPER and WARREN were immediately and directly responsible for the availability and provision of training provided to correctional officers and other staff at the Allegheny County Jail and the maintenance of a fully trained staff within the jail.  Accordingly, Defendants HARPER and WARREN were immediately and directly responsible for the health and safety of inmates and the availability and provision of adequate training to correctional officers and staff.

9.     At all times relevant hereto, Defendants HARPER and WARREN and their agents, servants, and/or employees were responsible for creating and implementing procedures, policies, guidelines, and practices for timely jail guard rounds, recognizing inmates being assaulted by other inmates, and recognizing inmates being at risk for physical and mental assaults to protect the health and safety of inmates.  Defendants HARPER and WARREN represented the legal authority and official policy of ALLEGHENY COUNTY, and acted under color of state law.

10.     At all times relevant hereto, Defendants HARPER and WARREN and their agents, servants and/or employees were responsible for creating and implementing procedures, policies, guidelines, and practices for timely rounds, investigations, referrals of inmates, and pod

3

inspection when circumstances arose that warranted intervention in order to protect an inmate from inmate on inmate violence. Defendants HARPER and WARREN represented the legal authority and official policy of ALLEGHENY COUNTY and acted under color of state law.

11.     At all times relevant hereto, the Defendant ALLEGHENY COUNTY was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

12.     Defendant CO ERO, (hereinafter referred to as "CO ERO"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers in charge of pod 6D on August 4, 2013 and was responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates.

13.     At all times relevant hereto, Defendant, JOHN DOE, (hereinafter referred to as "Defendant DOE") was one of the correctional officers in charge of pod 6D on August 4, 2013 and was responsible for managing, implementing policy, supervising, making rounds, and /or other relevant activity to provide adequate safety and protection to inmates from other inmates.

14.     At all times relevant hereto, the Defendants HARPER, WARREN, ERO and DOE were agents, servants, and/or employees of ALLEGHENY COUNTY and will be collectively referred to as the "COUNTY Defendants".

15.     At all times relevant hereto, Defendant ALLEGHENY COUNTY acted through its agents, servants, and employees.

16.     By virtue of its conduct, through its agents, servants, and employees, in

4

detaining, incarcerating, protecting and rehabilitating inmates at the Allegheny County Jail, Defendant ALLEGHENY COUNTY expressly assumed the duties of maintaining the health and safety of inmates with to the provision and availability of adequate medical care and maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

17.     The maintenance of clean, healthy, and safe conditions and the provision of adequate medical care to inmates within the Allegheny County Jail are operations and functions of the Defendant, ALLEGHENY COUNTY.

18.     The following Defendants were adult individuals and inmates at Allegheny County Jail on August 4, 2013 and were housed on pod 6D:

> a.)     MICHAEL WALLER,
> b.)     DORIAN WILLIAMS,
> c.)     GREGORY SMITH,
> d.)     DOMINQUE RUCKER,
> e.)     RICHARD MCCLINTON,
> f.)     SANTINO DREW, and
> g.)     DORIAN PEEBLES

(Hereinafter these Defendants are referred to collectively as "INMATE DEFENDANTS")

19.     At all times relevant hereto, the INMATE DEFENDANTS were considered enforcers, the "beat down mob", and/or generally ran pod 6D and were responsible for various attacks, physical intimidation, mental intimidation, and/or beat downs on other inmates who were housed on pod 6 D for a period of time from June 2013 through August 2013.

20.     At all times relevant hereto, other inmates housed on pod 6 D were in fear for their lives due to the conduct and behavior of the INMATE DEFENDANTS.

5

## JURISDICTIONO AND VENUE

21.     This action arises under 42 U.S.C. §1983.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this civil action arises under the Constitution and the laws of the United States.

22.     Venue is proper in this District under 28 U.S.C. §1391(b) because all of the events, actions and omissions giving rise to the within claims occurred in this District.

## FACTS

23.     Each of the above paragraphs is incorporated herein by reference.

24.     At all times relevant hereto, the COUNTY Defendants and Defendant ALLEGHENY COUNTY were required to adhere to and enforce the following policy and procedures:

a.)     These Defendants must consider inmate on inmate physical assaults prevention as one of the highest priorities of service within the correctional setting;

b.)     These Defendants must work together to identify inmates at risk for violence by other inmates;

c.)     These Defendants will have an outlined program for responding to inmate on inmate violence and attacks;

d.)     These Defendants must educate, train, enforce and/or adhere to the proper cell inspection when doing rounds in order to make sure that inmates are not holding other inmates as hostages and/or beating them for extended periods of time;

e.)     These Defendants must learn about an inmates' high risk periods of being physically assaulted by other inmates particularly if an inmate is not from the Pittsburgh area;

f.)     These Defendants must learn about the inmates housed on a pod in order to determine if any of the inmates are a threat to other inmates;

g.)     These Defendants must make rounds upon the pod pursuant to policy and procedure in order to prevent inmate on inmate violence on the pod;

h.)     These Defendants will review information of newly arriving inmates on a pod in this institution concerning issues related to being susceptible to physical intimidation and violence;

6

i.)    These Defendants conducting the rounds on a pod will be continuously alert to violent/suspect/harmful behavior;

j.)    These Defendants will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for inmate and inmate violence as well as targeting of inmates by other inmates for physical attack;

k.)    These Defendants who recognize an inmate as being potentially violent are to request immediate evaluation of the inmate through the nursing or mental health staff;

l.)    These Defendants' staff who recognize an inmate as being potentially violent are to request immediate evaluation of the inmate through the nursing mental health staff on Pods 5C, 5MD and 5D (once opened);

m.)    All assessments of potentially violent inmates is to be conducted by qualified professionals, trained to determine an inmate's level of physical violence to other inmates;

n.)    Inmates who have been determined to be a threat to other inmates should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting. Regular documented supervision should be maintained;

o.)    Regular, documented supervision should be maintained of a pod by a correctional officer;

p.)    Regular, documented round should be maintained of a pod by a correctional officer;

q.)    Constant supervision by a staff member of the pod is required and if a situation arises which requires intervention, it must be investigated immediately and intervention is required if the safety of an inmate is at issue;

r.)    The procedures for making rounds and how rounds are made as well as inspection of cells should be clearly outlined;

s.)    Clear, current and accurate information regarding an inmate must be communicated between shifts and correctional personnel pursuant to the procedures of communication;

t.)    The intervention plan on how to handle inmate on inmate violence that is in progress, including appropriate first aid measures, should be clearly outlined;

u.)    Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed inmate on inmate attacks will be in place;

v.)    Procedures for documenting the identification and monitoring of potential or attempted inmate on inmate attacks will be detailed, as well as procedures for reporting a completed inmate attack on another inmate;

w.)    The intervention plan should specify the procedure for administrative review if an attack by an inmate on an inmate does occur.

x.)    A formal procedure of collecting evidence and preserving evidence such as camera footage must be in place and clearly outlined.

25.     On August 4, 2013, Plaintiff was being held at the Allegheny County Jail since February/March of 2013.

26.     During the incarceration period of the Plaintiff, he was transferred and housed on pod 6 D on or about late July/early August of 2013.

27.     At all times relevant hereto, the INMATE DEFENDANTS were housed on pod 6 D prior to August 4, 2013.

28.      At all times relevant hereto, the INMATE DEFENDANTS were terrorizing, physically abusing, mentally abusing, attacking, importing contraband and/or threatened the safety of various inmates on pod 6 D for two (2) months prior to August 4, 2013.

29.     At all times relevant hereto, the other Defendants were aware of these threats to safety as well as the physical violence perpetuated upon other inmates by the INMATE DEFENDANTS.

30.     At all times relevant hereto, it is believed that the COUNTY Defendants and Defendant ALLEGHENY COUNTY knew or should have known of the conduct of the INMATE DEFENDANTS on pod 6 D due to the following but not limited to:

      a.)     Grievances filed by the other inmates;

      b.)     Official Inmate Complaint forms;

      c.)     Confidential informants;

      d.)     Witnessing events;

      e.)     Witnessing attacks;

      f.)     Increased medical requests for unexplained injuries;

      g.)     Incident reports by correctional officers for unexplained injuries;

      h.)     Inmates refusing to cooperate or explain injuries.

31.    At all times relevant hereto, the COUNTY Defendants and Defendant ALLEGHENY COUNTY knew that any inmate coming into pod 6 D was at risk for a violent attack from the INMATE DEFENDANTS.

32.    At all times relevant hereto, the COUNTY Defendants and Defendant ALLEGHENY COUNTY recognized and knew that the INMATE DEFENDANTS were "beating down" other inmates.

33.    At all times relevant hereto, the COUNTY Defendants and Defendant ALLEGHENY COUNTY recognized and knew that the doors to the separate cells needed to be closed during certain periods of the day.

34.    At all times relevant hereto, the County DEFENDANTS and Defendant ALLEGHENY COUNTY recognized that inadequate staffing created a reckless risk of harm to inmates as well as correctional officers.

35.    On or about August 4, 2013, based upon video surveillance footage from CCTV reviewed by a Sargent Nort, the following time line was established:

       a.)    Plaintiff is seen sitting on a chair in front of the TV on the pod 6D at 18:36:20;

       b.)    Plaintiff is seen getting up and walking over to cell 110 at 18:36:31;

       c.)    Several inmates are then seen entering cell 110 behind the Plaintiff;

       d.)    Plaintiff does not leave cell 110 until 19:49:46 whereby he leaves the cell with a towel around his head and walks to his own cell.

36.    It is undisputed that the Plaintiff was held in cell 110 for approximately one (1) hour and thirteen (13) minutes.

37.    It is undisputed that no one from the Allegheny County Jail including any of the correctional officer Defendants or any other personnel employed by Defendant ALLEGHENY COUNTY came to investigate why so many inmates were in one cell which is in violation of jail protocol and policy.

38.     It is undisputed that rounds were made during this time period by the correctional officer Defendants and that no one investigated cell 110.

39.     It is undisputed that the video camera footage showed the above and no one monitoring the footage communicated with any correctional officers or staff that cell 110 had a large number of inmates located in it which was in violation of jail protocol and policy.

40.     All COUNTY Defendants and Defendant ALLEGHENY COUNTY agree that protocol and policy is in place at the jail in order to promote safety as well as for care, custody and control purposes.

41.     All COUNTY Defendants and Defendant ALLEGHENY COUNTY recognize that violation of protocol and policy established at the jail more likely than not will result in injury to either inmates and/or other correctional staff.

42.     At all times relevant hereto, Plaintiff was lured to cell 110 by the INMATE DEFENDANTS whereby he was continuously beaten, stomped on, and violently assaulted for approximately one (1) hour thirteen (13) minutes.

43.     At all times relevant hereto, when the Plaintiff entered cell 110, the INMATE DEFENDANTS pushed him from behind and knocked him to the ground, bound his hands in front, kept him on the floor, and beat and harassed him for a substantial period of time.

44.     At all times relevant hereto, whenever a correctional officer went by cell 110, one of the INMATE DEFENDANTS held up a towel or some type of item to obstruct the window view.

45.     At all times relevant hereto, no one questioned and/or investigated why the window in cell 110 was obstructed.

46.     At all times relevant hereto, no one questioned and/or investigated why the door to cell 110 was closed during the time period that the Plaintiff was held and beaten in it.

47.    At all times relevant hereto, the door to 110 was supposed to be shut and locked and it was violation of jail policy and protocol to allow the doors to remain open to the cells on pod 6 D at the time the Plaintiff was assaulted.

48.    At all times relevant hereto, the correctional officer Defendants and/or an unknown correctional officer made rounds several times during that time period and saw that the door to cell 110 was closed and the window was covered up which is all in violation of jail protocol and policy, yet nothing was done to investigate this situation and to stop the attack on the Plaintiff.

49.    At all times relevant hereto, only one correctional officer was on duty on pod 6 D at the time of the attack of the Plaintiff.

50.    At all times relevant hereto, the Defendants did knowingly disregard the objective and/or excessive risk the INMATE DEFENDANTS posed to the safety of other inmates on pod 6 D.

51.    At all times relevant hereto, during the course of the INMATE DEFENDANTS' detention, the COUNTY Defendants and Defendant ALLEGHENY COUNTY failed to recognize that the INMATE DEFENDANTS presented an objective and/or excessive risk of violence and to the safety of other inmates similar to the Plaintiff.

52.    At all times relevant hereto, COUNTY Defendant and Defendant ALLEGHENY COUNTY failed to be continuously alerted to threats of violence by the INMATE DEFENDANTS' behavior.

53.    At all times relevant hereto, during the course of Plaintiff's detention, the COUNTY Defendants and Defendant ALLEGHENY COUNTY failed to respond properly or adequately to the objective and/or excessive risk of violence posed by the INMATE DEFENDANTS.

54.   As a direct and proximate result of the Defendants' conduct, Plaintiff suffered the following injuries:

    a.)   Swelling on the right side of face;

    b.)   Loss of consciousness

    c.)   Fractured nose;

    d.)   Traumatic brain injury;

    e.)   Swelling on the brain;

    f.)   Life threatening seizure disorder;

    g.)   Abrasions;

    h.)   Bruises;

    i.)   Headaches;

    j.)   Blurred and cloudy vision;

    k.)   Lightheadness;

    l.)   Depression;

    m.)   Anxiety;

    n.)   Paranoia.

55.   As a result of these injuries, Plaintiff has sustained the following damages:

    a.   He has suffered and will suffer great pain, inconvenience, embarrassment and mental anguish;

    b.   He may be required to pay sums of money for medical attention, medical supplies and medicines;

    c.   His general health, strength and vitality have been impaired;

d.      His earning capacity has been reduced and may be permanently impaired; and,

e.      He has been and will in the future be unable to enjoy various pleasures of life that he previously enjoyed.

## COUNT I – PLAINTIFF v. COUNTY DEFENDANTS AND DEFENDANT ALLEGHENY COUNTY PURSUANT TO 42 U.S.C. §1983

49.     The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

50.     At all relevant times, these COUNTY Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of Defendant ALLEGHENY COUNTY and under the authority of their offices as law enforcement officers.

51.     Defendants deprived the Plaintiff of the rights, privileges, and immunities secured to him by 42 U.S.C. §1983 and by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided by Plaintiff by the Pennsylvania state constitution.

52.     Plaintiff's injuries and damages were the direct and proximate result of the Defendants' conduct as follows:

a.      In failing to recognize that the Plaintiff was the victim of a physical assault at the hands of the INMATE DEFENDANTS;

b.      In failing to respond properly or adequately to the objective signs that the Plaintiff was the victim of intimidation and coercion by the INMATE DEFENDANTS;

c.      In failing to properly monitor the employees, servants and/or agents of the county Defendants;

13

d.      In failing to provide a safe environment that would have prevented physical and emotional abuse Plaintiff endured while incarcerated at Allegheny County Jail;

e.      In failing to review information concerning issues related to proper conduct of Corrections Officers and other staff of Allegheny County Jail;

f.      In failing to outline the procedures for the proper handling of supervision of inmates on pod 6D which included when doors to cells should be shut as well as the proper way to administer rounds;

g.      Deliberate indifference to the Constitutional rights of the citizens of this Commonwealth;

h.      Deliberate indifference to the need to protect the citizens and inmates from physical attacks by other inmates;

i.      Deliberate indifference to their Corrections Officers failure to adhere to policies and procedures which were put in place to protect both inmates and correctional staff in monitoring and watching inmates;

j.      Deliberate indifference to the obvious need for training and supervision of their Corrections Officers;

k.      Failing to properly train their Corrections officers, including the employees of the Defendant ALLEGHENY COUNTY regarding protecting inmates from physical abuse and mental abuse, when monitoring inmates;

l.      Failing to properly supervise their Corrections Officers so that protocol and policy for supervision of a pod would be adhered to and would not unnecessarily place inmates at risk for physical abuse and mental abuse;

m.      In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

n.      In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendants;

o.      In failing to review information concerning issues related to physical assaults of inmates by other inmates;

p.      In allowing the assault and abuse of inmates by inmates;

q.      In violating policy and procedures with deliberate indifference;

14

r.    In failing to report to the proper authorities anything about the known physical assaults, abuse and other conduct being performed on the inmates by inmates;

s.    In implementing policies and procedures that infringed on the rights of inmates;

t.    In failing to properly research, check and investigate the prior work histories of its employees;

u.    In failing to investigate any complaints of prisoner abuse;

v.    In failing to adhere to their own policy and procedures regarding the conduct of its Corrections Officers and staff and/or personnel when they would interact with inmates;

w.    In failing to respond properly or adequately to the objective and/or excessive risk of inmate on inmate violence posed by the INMATE DEFENDANTS;

x.    In failing to properly monitor the Plaintiff and/or INMATE DEFENDANTS;

y.    In failing to request intervention by experienced correctional personnel on the Plaintiff's behalf;

z.    In failing to properly observe the condition of the Plaintiff and the INMATE DEFENDANTS while in custody;

aa.)    In failing to prevent the attack on Plaintiff in a timely manner;

bb.)    In failing to provide a safe environment that would have prevented the attack of the Plaintiff;

cc.)    In failing to monitor pod 6 D appropriately under the circumstances;

dd.)    In failing to review information concerning issues related to inmate on inmate violence;

ee.)    In failing to conduct the rounds and other protocol governing the supervision of pod 6 D in a manner which would continuously alert them to violent behavior;

ff.)    In failing to provide training in the training programs for both Allegheny County Jail correctional and other staff pertaining to proper supervision of a pod and/or rounds and/or inmates;

15

gg.)    In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for violence;

hh.)    In failing to recognize that the INMATE DEFENDANTS were violent individuals and a threat to other inmate safety;

ii.)    In failing to house the INMATE DEFENDANTS in a restricted housing unit due to their violent behavior;

jj.)    In allowing Plaintiff to be placed on pod 6 D;

kk.)    In failing to conduct the assessment of inmates by qualified professionals, trained to determine an inmate's level of violence risk;

ll.)    In failing to place the Plaintiff in the appropriate housing unit;

mm.)   In failing to provide regular and documented supervision of pod 6 D;

nn.)    In failing to take action when they received appropriate information that the INMATE DEFENDANTS are a threat to other inmates on pod 6 D;

oo.)    In failing to follow the policies and procedures which govern pod 6 D;

pp.)    In failing to do rounds every hour on pod 6 D;

qq.)    In failing to outline the procedures for referring potentially violent inmates to other housing options at the jail;

rr.)    In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

ss.)    In failing to outline an intervention plan on how to handle violent inmates;

tt.)    In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed attacks on inmates;

uu.)    In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

vv.)    In failing to monitor the CCTV and communicating and perceived risks.

53.     The COUNTY Defendants and Defendant ALLEGHENY COUNTY did not recognize and respond to the objective and/or excessive risk of violence posed by the INMATE DEFENDANTS to other inmates while in the INMATE DEFENDANTS were housed on pod 6 D.

54.     Defendants, in depriving Plaintiff of his constitutional rights, were intentional, negligent, recklessly indifferent, willful, wanton, malicious, and outrageous.

55.     The actions of the individual corrections officers as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendant ALLEGHENY COUNTY, which policy, practice and/or custom is implemented by individual corrections officers.

56.     Defendant ALLEGHENY COUNTY had approved and condoned the procedures implemented by and enforced by the individual correctional officers.

57.     The Defendants' failure to recognize or respond to the objective and/or excessive risk of suicide presented by the Plaintiff while in the care and custody of the Defendant ALLEGHENY COUNTY caused his injuries and death.

58.     Plaintiffs also claim reasonable attorneys' fees and costs from Defendants as provided by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff, CHARLES GIFFORD, demands judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT II – PLAINTIFF v. DEFENDANT
## ALLEGHENY COUNTY PURSUANT TO 42 U.S.C. §1983

59.     The Plaintiff incorporate by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

60.     Plaintiff 's injuries and damages were a direct and proximate result of the Defendants' conduct as follows:

     a.)    In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

     b.)    In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendant ALLEGHENY COUNTY;

     c.)    In failing to properly train individual corrections officers to provide medical intervention to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

     d.)    In failing to recognize that the behavior of the INMATE DEFENDANTS;

     e.)    In failing to supervise properly individual corrections officers;

     f.)    In failing to train properly corrections officers in the recognition of objective and/or excessive risk of violence to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

     g.)    In failing to train properly corrections officers in violence prevention of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

18

h.)     In failing to train properly corrections officers in violence risk assessment of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

i.)     In failing to train properly corrections officers in responding to facts that placed persons at an increased risk of violence under the care and custody of the Defendant ALLEGHENY COUNTY;

j.)     In failing to review information concerning issues related to supervising and monitoring pod 6 D;

k.)     In failing to provide training in pod supervision training in the training programs for both Allegheny County Jail correctional;

l.)     In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for violence;

m.)     In failing to recognize that the INMATE DEFENDANTS as being potentially violent;

n.)     In failing to provide regular and documented supervision of pod 6 D;

o.)     In failing to check on the inmates in pod 6 D every hour;

p.)     In failing to outline the procedures for referring potentially violent inmates to other housing options at the jail;

q.)     In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

r.)     In failing to outline an intervention plan on how to handle violent inmates;

s.)     In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed attacks on inmates;

t.)     In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

u.)     In failing to monitor the CCTV and communicating and perceived risks.

61.     The actions of the individual corrections officers as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendant ALLEGHENY

COUNTY, which policy, practice and/or custom is implemented by individual corrections officers.

62.     Defendant ALLEGHENY COUNTY had approved and condoned the procedures implemented by and enforced by the individual correctional officers.

63.     Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT III – PLAINTIFF v. DEFENDANT ALLEGHENY COUNTY

64.     The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

65.     Pursuant to 42 Pa. C.S.A. §8548, Defendant ALLEGHENY COUNTY is the indemnitor of its employees, the individual corrections officers, for the payment of any judgment for damages resulting from a judicial determination that an act of either or any of individual

corrections officers was the cause and their actions were within the scope of their duties as corrections officers.

66.    Plaintiffs are therefore entitled to recover payment from the Defendant ALLEGHENY COUNTY for any judgment against the individual Defendants and/or employees, agents, and/or servants of the individual Defendants arising from the prior counts of this Complaint.

WHEREFORE, the Plaintiff demand judgment against the Defendants for compensatory and punitive damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

## COUNT IV – PLAINTIFF v. INMATE DEFENDANTS ASSAULT & BATTERY

67.    The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

68.    In the course of Defendants' intentional and wrongful actions in assaulting the Plaintiff, they physically contacted Plaintiff's person, which was both harmful and highly offensive to Plaintiff.

69.    The actions of Defendants constitute a battery under the laws of the Commonwealth of Pennsylvania as follows:

        a.    In wantonly, knowingly and recklessly causing harmful and/or offensive contact against Plaintiff;

21

b.   In wantonly, knowingly and recklessly causing harmful bodily injury to the Plaintiff;

c.   In wantonly, knowingly and recklessly using excessive force to effectuate Plaintiff's arrest, which caused Plaintiff to suffer physical harm as previously set forth;

d.   In wantonly, knowingly and recklessly causing physical harm to Plaintiff without provocation or cause.

70.   Defendants committed the aforementioned acts with the intent of causing harmful and/or offensive contact against Plaintiff.

71.   As a direct and proximate result of the conduct of Defendants, the Plaintiff suffered the injuries and damages previously set forth.

72.   At all times relevant, the actions of Defendants were outrageous, willful, wanton and a gross act of reckless indifference. Therefore, Defendants should be subject to the imposition of punitive damages, which plaintiff claims against them.

WHEREFORE, Plaintiff respectfully requests judgment be entered in his favor and against the INMATE DEFENDANTS, jointly and severally, in an amount in excess of seventy-five thousand ($75,000) dollars, plus interest, costs, attorneys' fees, punitive damages and such other relief as this Court may deem appropriate.

## JURY TRIAL DEMANDED

## COUNT V – PLAINTIFF v. INMATE DEFENDANTS
## FALSE IMPRISONMENT

73.     The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

74.     The INMATE DEFENDANTS' actions and omissions, as more fully described in the factual component of this Complaint, resulted in the Plaintiff being falsely imprisoned in cell 110 for a substantial period of time.

75.     The Plaintiff's liberty was further restricted during the time period that Plaintiff was being beaten by the INMATE DEFENDANTS.

76.     As a direct and proximate result of the conduct of Defendants, the Plaintiff suffered the injuries and damages previously set forth.

77.     At all times relevant, the actions of INMATE DEFENDANTS were outrageous, willful, wanton and a gross act of reckless indifference.  Therefore, these Defendants should be subject to the imposition of punitive damages, which plaintiff claims against them.

WHEREFORE, Plaintiff respectfully requests judgment be entered in his favor and against the INMATE DEFENDANTS, jointly and severally, in an amount in excess of seventy-five thousand ($75,000) dollars, plus interest, costs, attorneys' fees, punitive damages and such other relief as this Court may deem appropriate.

**JURY TRIAL DEMANDED**

23

## COUNT VI – PLAINTIFF v. INMATE DEFENDANTS
## INFLICION OF EMOTIONAL DISTRESS

78.     The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

79.     As a result of being beaten and held hostage in cell 110, the Plaintiff suffered extreme emotional distress.

80.     Defendants' actions and omissions, as more fully described in the factual component of this Complaint, were outrageous, egregious and unjustified.

81.     As a direct and proximate result of the conduct of Defendants, Plaintiff suffered the injuries and damages previously set forth.

82.     At all times relevant, the actions of INMATE DEFENDANTS were outrageous, willful, wanton and a gross act of reckless indifference.  Therefore, these Defendants should be subject to the imposition of punitive damages, which plaintiff claims against them.

WHEREFORE, Plaintiff respectfully requests judgment be entered in his favor and against the INMATE DEFENDANTS, jointly and severally, in an amount in excess of seventy-five thousand ($75,000) dollars, plus interest, costs, attorneys' fees, punitive damages and such other relief as this Court may deem appropriate.

**JURY TRIAL DEMANDED**

24

## JURY DEMAND

PLAINTIFF REQUESTS THAT ALL ISSUES THAT MAY BE DETERMINED BY A

JURY BE TRIED BY A JURY.

Respectfully submitted,

BY: _____

Steven M. Barth, Esquire
Pa. I.D. #89395

P.O. Box 23627
Pittsburgh, PA 15222
(412) 779-3806
smbassociates@gmail.com

Attorneys for the Plaintiff